Harold B. Hood, Indianapolis, Ind., Robert C. Williams, C. W. Ooms, Chicago, Ill., for plaintiff.

Dawson, Tilton & Graham and T. L. Tilton, Chicago, Ill., for defendant.

**BORG-WARNER CORP.**

v.

**MALL TOOL CO.**

No. 49 C 1233.

United States District Court, N. D. Illinois, E. D.

Sept. 24, 1953.

BARNES, Chief Judge.

This is a suit by Borg-Warner Corporation, owner by assignment of Hassler Patent No. 2,326,854, issued August 17, 1943, on an application filed April 1, 1940, on Method and Means for Sawing Wood, against defendant, Mall Tool Company, which is charged to have infringed and to be infringing said letters patent by making, selling and using chain saws embodying the invention of said patent. The defenses are non-infringement and invalidity.

In order that the excerpts from the patent hereinafter set forth may be understood, there are set forth below Fig-

ures 12 to 17, both inclusive, of the patent drawings:

result in another respect by providing a chain type saw wherein a

FIG.12
FIG.13
FIG.14
FIG.15
FIG.16
FIG.17

The patentee, in his patent, describes that portion of his invention in suit as follows:

"The principal object of my invention is to provide an improved method and means for sawing wood whereby a reasonable cutting speed may be maintained with little power. I achieve said result, in one respect by following a new sequence of cutting operations. It has heretofore been common practice, particularly where wood was being cut crossgrain, to define the kerf to be cut by means of cutting teeth, and then to remove the wood from the kerf by means of chisel-type raker teeth. Thus the second of these two operations has comprised both cutting the wood loose and removing it. I now propose to divide this second operation into two steps, first loosening the wood in the kerf by a slicing operation, and then removing it lengthwise of the kerf by drag teeth that do no cutting. "I achieve said

depth gage and a pair of wood slicing elements are secured to common links, some of said pairs of wood slicing elements comprising side cutters for defining the sides of the kerf, and other alternate pairs of slicing elements comprising bottom routers for slicing the wood free of the bottom of the kerf. I find that a satisfactory cutting speed can be maintained with this arrangement at a materially lower lineal speed. The steady operation of this type of saw, resulting largely from the use of depth gages on the same link with a pair of cutting teeth or routers, produces a smooth kerf without waste of cutting effort, whereas with chain type saws heretofore known, a jagged kerf has been produced as a result of much duplication of cutting operations.

\*    \*    \*    \*    \*    \*

"Fig. 12 is a large scale fragmentary perspective view of the cutting member of Fig. 1, said member be-

ing shown cutting a piece of wood;

"Fig. 13 is a perspective view of one of the teeth shown in Fig. 12;

"Fig. 14 is a perspective view of another of said teeth;

"Fig. 15 is a perspective view of still another of said teeth;

"Fig. 16 is a side elevation of another of said teeth; and

"Fig. 17 is a fragmentary sectional view taken along the line 17–17 in Fig. 12.

\* \* \* \* \* \*

"I will now describe my improved form of saw teeth, referring to Figs. 12. My invention is directed primarily to the sawing of wood cross grain. To accomplish this sawing with a minimum expenditure of power, I first define the saw kerf by cutting two parallel grooves the required distance apart and to a depth of about 1⁄32 inch. I cut said grooves by means of two thin cutting teeth 60 and 61, said teeth being alike except that one is left hand and the other right hand. Said cutting teeth have thin edges that cut easily, but that do not dull quickly because of their unusual length.

"It has been common practice heretofore to define the saw kerf by means of cutting teeth. However, said cutting teeth have presented points to the wood to be cut, instead of long, thin blades. There is a material difference in the operation aside from the fact that the long blades cut easier and last longer. Said difference is of particular importance in chain type saws wherein the teeth are not rigidly supported and where, consequently, it is difficult to make said teeth run true. The pointed cutting teeth heretofore used have been well adapted to travel along sharply curved paths. On the other hand, cutting teeth comprising long blades, such as is shown in Fig. 14, would not be suitable for turning sharp corners; they must travel in substantially straight lines. It follows that my cutting teeth will run true even in a chain saw where they are not well supported, whereas pointed teeth would tend to run in irregular paths.

"To make the cutting teeth run true, it is desirable that a substantial portion of the cutting edge lie in the groove cut by the preceding portion. In other words, the bottom of the cutting edge should be approximately horizontal, rather than pointed.

"It has heretofore been the practice to follow the cutting teeth with some form of raker, usually of the chisel type. The kerf has thus been formed by first defining it by a pair of parallel grooves, and then chiselling out the portion between the grooves. The chiselling member has served the dual purpose of loosening the sawdust and of removing the same from the kerf. I depart from this established practice in that I provide separate teeth for the two aforesaid functions.

"Cutting teeth 60 and 61 are followed by a pair of what I call router teeth 62 and 63. The purpose of said router teeth is not to remove sawdust from the kerf; it is merely to cut loose the pieces of wood that have been defined by the cutting teeth, by a slicing operation. Said teeth 62 and 63 are similar, differing in one respect in that one is left-hand while the other is right-hand, and differing furthermore in that tooth 63 is somewhat wider than tooth 62, for reasons hereinafter discussed.

"As is shown in Figs. 15 and 16, said router teeth comprise vertical members 64 formed integrally with horizontal members 65, thus providing a tooth which is L-shaped in vertical section so that the shank of the L may travel in one of the grooves formed by a preceding slitting tooth 60 or 61. The forward edge of each of said members is sharpened. The position of the cut-

ting edge on the front of member 65 is a matter of importance. I prefer that members 64 and 65 be formed substantially at right angles to each other though this is not essential. However, shank member 64 is not exactly vertical, being tilted as shown in Fig. 17 so that only the distance between the heels of the L's equals the lateral spacing of the cutting edges of the slitting knives 60, 61 so as to provide proper clearances from the side walls of the kerf. It would seem, then, that the sharpened forward edge of the member 65 would be correspondingly tilted with respect to the horizontal so that the kerf would be deeper in the center than at its edges. Such is not the case, however, because said sharpened forward edge is not square; it is inclined backward. Because member 65 is inclined upward, (Fig. 16) from front to rear, this backward inclination of the cutting edge results in a substantially flat-bottomed kerf. The bottom surface of teeth 62 and 63 is inclined in two directions with respect to the horizontal bottom of the kerf, namely, from side to side and from front to rear. The cutting edge is formed at such an angle that it is substantially horizontal. This results in a flat-bottomed kerf, which is desirable; it gives a sloping cutting edge, which is also desirable; and at the same time it provides clearance back of the cutting edge, which reduces friction.

"Cutting teeth 60 and 61 are rigidly connected and therefore are both mounted on or integral with link members 66. Router teeth 62 and 63 are also rigidly connected, both being mounted on or integral with other link members 66. Another tooth 67 is rigidly mounted on the forward portion of each of said link members 66. Although a tooth 67 is used ahead of the cutting teeth and also in front of the router teeth, it performs somewhat different functions in the two cases. As used in front of the cutting teeth, it serves the purpose of a drag, that is, it removes the saw-dust from the kerf; its function is to transport sawdust that has been loosened by the router teeth ahead. It also serves as a depth gage to limit the depth of cut of teeth 60 and 61. As used in front of the router teeth, tooth 67 serves solely as a depth gage. Since a chain type saw is more or less flexible, it is desirable to place a depth gage upon each link member that carries router teeth. Although said router teeth are highly efficient, cutting fast with little power, they have the inherent property of tending to draw themselves more deeply into the wood. Without a depth gage to control this tendency, the operation of said teeth would be unsatisfactory in that they would tend to jump along the wood instead of cutting smoothly. On the other hand, with a depth gage to control the depth to which said teeth may cut, this tendency of said router teeth to draw themselves toward the wood is highly advantageous since it results in a very steady cutting operation. A nice control of the depth cut, and a uniform depth of cut for all teeth is essential for efficient sawing.

"I find it convenient to utilize the same kind of teeth for both clearing the kerf of sawdust, and serving as a depth gage. The corners of the teeth used as depth gages should be rounded so they will slide readily. Raker teeth heretofore known have necessarily been sharpened. However, the router teeth hereinbefore described pass under the material being separated from the bottom of the kerf so that it is readily removable by the rounded drag teeth. I find that this arrangement results in sawdust being cleared from the kerf effectively without interfering with the cutting operation, and there is no tendency for said sawdust to

be carried around the saw to re-enter the kerf; the rounded drag teeth readily release the sawdust.

"As mentioned, tooth 62 is somewhat narrower than tooth 63. This serves to balance the draft of the link member to which said teeth are attached. Tooth 62 being ahead of tooth 63 lifts up· one edge of the sawdust. Thereafter tooth 63 lifts up one edge of the sawdust. If both teeth were of the same width, more force would be required to move tooth 62, and said teeth would tend to run to one side. I deem it of considerable importance that the draft of each link member be balanced, since difficulty will otherwise be encountered in making the chain saw run true. To this end, I also stagger teeth 67, that is, I place the tooth 67 that follows the router teeth on the side of link member 66 opposite tooth 63 since said tooth 63 tends to throw the sawdust to that side, and I then place the next tooth 67 on the opposite side of link member 66.

"It will be understood that link members 66 form a part of an otherwise conventional saw chain. I prefer to provide tabs 68 on the backs of said link members. Said tabs ride in and are guided by slot 69 formed in guide plate 33. If desired, said guide plate might be of the well known laminated construction, slot 69 being formed by a narrow lamination.

"It will be noted that the laterally projecting toe 65 of each of the L-shaped teeth 62 and 63 is also relatively thin and that its forwardly-presented edge is formed by beveling downward the forward portion of the upper surface of the toe and that the trailing portion of the upper surface of this toe therefore lies at a flatter angle—relative to the bottom of the kerf—than said beveled surface and that this trailing portion has no tendency to engage the material which is being separated from the work piece at·the bottom of the kerf. It will also be noticed that the tooth 67 which is rigidly associated with the trailing tooth pair 60, 61 is longitudinally separated from the next forward tooth 63. As a result of this arrangement, the bottom-forming teeth 62, 63 have no tendency, on the material which is being separated from the bottom of the kerf, to crowd that material into the interstices of the chain, and that, on the contrary, ample space for the separated material is provided between tooth 63 and the trailing clearing tooth 67, so that the said trailing tooth 67 may carry the separated material out of the kerf without choking. The term 'L-shaped' is intended as descriptive of a cutting element having a shank intended to travel in a plane closely approximating the plane of a side wall of a kerf or cut produced by the saw and a toe extending laterally from the shank at a substantial angle to the plane of the shank and toward the opposite side wall of the kerf to serve as a bottom-defining element for the kerf."

Claims 1, 2, 9, 10, 11, 12, 13 and 14 of the patent are in suit. They are as follows:

"1. In a chain saw, a plurality of pivotally joined links, certain of said links having formed thereon angularly disposed slicing elements extending from one marginal edge of said chain saw towards the longitudinal centerline of said chain saw, said slicing elements having transverse, bottom routing edges formed thereon, said slicing elements being arranged in pairs oppositely disposed and spaced laterally apart, and others of said links having formed thereon side cutters having cutting edges lying at the marginal edges of said chain saw."

"2. In a chain saw, a plurality of pivotally joined links, certain of said links having formed thereon angu-

larly disposed slicing elements extending from one marginal edge of said chain saw towards the longitudinal centerline of said chain saw, said slicing elements having transverse, bottom routing edges formed thereon, said slicing elements being arranged in pairs oppositely disposed and spaced laterally apart, said slicing elements also being longitudinally spaced apart, and others of said links having formed thereon side cutters having cutting edges lying at the marginal edges of said chain saw."

"9. A saw tooth comprising a shank and a laterally extended toe lying at a substantial angle to the shank and having a forwardly presented chisel edge extending from the free end of said toe to the junction of said toe with the shank and at the lowermost part of the tooth."

"10. A saw tooth comprising a shank having a forwardly-presented chisel edge adjacent its free end and a laterally extended toe lying at a substantial angle to the shank and having a forwardly-presented chisel edge at the lowermost part of the tooth and extending from the free end of said toe to the junction of said toe with the shank."

"11. A saw having successive tooth groups, each comprising a pair of laterally spaced allochiral slitting teeth and a longitudinally spaced trailing kerf-bottomed-defining L-shaped tooth, the toe of said L projecting laterally from the shank toward the median plane between the slitting teeth and having a forwardly-presented chisel edge at the lowermost part of the tooth and the shank of said L being arranged to trail in the path of movement of one of said slitting teeth."

"12. A saw having successive tooth groups, each comprising a pair of laterally spaced allochiral slitting teeth and a longitudinally spaced trailing kerf-bottom-defining L-shaped tooth, the toe of said L projecting laterally from the shank toward the median plane between the slitting teeth and having a forwardly-presented chisel edge at the lowermost part of the tooth and the shank a forwardly-presented edge immediately adjacent the chisel edge of the toe, the shank of said L being arranged to trail in the path of movement of one of said splitting teeth."

"13. A saw having an L-shaped kerf-bottom-defining tooth wherein the toe of the L projects laterally from the shank and has a forwardly-presented lateral chisel edge at the lowermost part of the tooth."

"14. A saw having an L-shaped kerf-bottom-defining tooth wherein the toe of the L projects laterally from the shank and has a forwardly-presented lateral chisel edge at the lowermost part of the tooth and the shank immediately adjacent the toe has a forwardly-presented vertical chisel edge."

The court will first take up the question of infringement.

In its complaint, the plaintiff charges infringement generally. In its answer, the defendant denies infringement generally. In his opening statement, counsel for plaintiff stated that there are six accused devices, represented by Plaintiff's Exhibits 1 to 6, inclusive, that claims 1, 2, 9, 10, 13 and 14 are infringed by all six of the accused structures, and that claims 11 and 12 are asserted against only a single structure (Pl. Ex. 6), which is a model defendant at one time made, never sold and discontinued. In his briefs, filed since the taking of the testimony, and in the final oral arguments, counsel has maintained this position. In his opening statement, counsel for defendant denied infringement of claims 1 and 2 by any of defendant's devices, and denied that defendant's side planer chain (Pl. Ex. 4) infringes claim 1, 2, 9, 10, 13 or 14. In his brief, filed since the taking of

the testimony, and in the final arguments, counsel's position remains unchanged.

When the respective contentions of counsel are compared, it appears that the infringement of claims 9, 10, 13 and 14 by five accused devices, represented by Plaintiff's Exhibits 1 to 3, inclusive, and 5 and 6, and the infringement of claims 11 and 12 by Plaintiff's Exhibit 6, is inferentially admitted.

The court now comes to those charges of infringement which are not admitted and are, on the contrary, denied.

The defendant says that claims 1 and 2 in suit are not infringed by defendant's accused commercial structures, that element 3 of each of said claims, the side cutter teeth 60, 61 of the Hassler structure, are entirely lacking in defendant's accused commercial structures. More specifically, the defendant says that its said structures do not have "*others of said links*" having formed thereon side cutters having cutting edges lying at the marginal edges of said chain saw." It further says that neither do defendant's said structures have any element which performs the function attributed to this omitted and material element of claims 1 and 2 in suit, which the Hassler patent says is to "define the saw kerf by cutting two parallel grooves \* \* \* so that the shank of the L may travel in one of the grooves formed by a preceding slitting tooth 60 or 61." Defendant says, finally, that there is no identity in function between the router teeth of defendant's structure and the side cutters called for by claims 1 and 2, since defendant's router teeth perform only that part of the function of the side cutters that the router teeth must perform because of the omission of the side cutters, that the router teeth do not perform the function ascribed by the patent to the side cutters of providing long thin blades that cut easily and "do not dull quickly because of their unusual length."

Plaintiff admits, as it must, that no separate side cutting teeth, devoid of laterally extending toes, are embodied in Plaintiff's Exhibit 1, 2, 3 or 4, but plaintiff insists that the absence of those separate side cutting teeth does not avoid infringement of claims 1 and 2 in suit. Plaintiff points out that claims 11 and 12 of the patent require a pair of slicing teeth and, separately, a pair of L-shaped teeth, that claims 15 and 16 (not in suit) recite tooth groups, each comprising a pair of slitting teeth and a separate pair of L-shaped teeth, that claims 1 and 2 do not thus require side slitting teeth and separate L-shaped teeth, that, instead, each of these claims specifies that certain links of the chain shall have formed thereon angularly disposed slicing elements of defined characteristics, and that other links in the chain shall have formed thereon side cutters having cutting edges lying at the marginal edges of the chain saw, and, finally, that certain links of each of the accused structures do have such slicing elements and that each tooth of each of the accused structures has a side cutter which has a cutting edge lying, at least, in part, at a marginal edge of the saw.

The plaintiff argues that neither of these claims requires that the links which are provided with the slicing elements shall be devoid of side cutters, or that the links which are provided with side cutters shall be devoid of slicing elements. Since every tooth of the accused structure includes a slicing element and a side cutter, it follows necessarily that some of the teeth have slicing elements and others of the teeth have side cutters, and that thus the language, as well as the spirit, of the claims is satisfied in the accused structures.

At first, the court was inclined to the opinion that the defendant has merely combined, in a single member, two elements which are shown as separate elements in the Hassler disclosure, and that, in doing this, defendant has not eliminated any function or changed any mode of operation, and that neither has defendant avoided the language of claims 1 and 2, and, therefore, the court was inclined to the opinion that claims 1 and 2 are infringed.

The defendant contends that this construction of claims 1 and 2 renders these claims invalid for lack of invention over the patents to Bailey 834,251 and to Bens 1,652,295, in view of Barnes et al. 261,197 and Barnes 749,603. The defendant argues that with claims 1 and 2 construed as plaintiff would construe them all Hassler did was to modify the chain saws of Bailey or Bens by substituting for the raker teeth of those patents L-shaped chisel teeth arranged as more particularly suggested in Barnes 749,603.

The court is of the opinion that claims 1 and 2 should not be construed so as to render them invalid, and that, accordingly, they should not be construed as plaintiff contends, and, therefore, the court has concluded that because no separate side cutting teeth, devoid of laterally extending toes, are embodied in Plaintiff's Exhibit 1, 2, 3, 4 or 5, they do not infringe claim 1 or 2.

The defendant contends that the Mall side planer (Plaintiff's Exhibit 4) chain tooth does not have any part which corresponds to the following element found in claims 9 and 10 of the Hassler Patent: "A laterally extended toe lying at a substantial angle to the shank." Defendant also contends that said tooth does not have a part which corresponds to the following element found in claims 13 and 14 of the Hassler patent: "an L-shaped kerf-bottom-defining tooth." The court holds that in these contentions the defendant is in error. The tooth of the Mall side planer saw chains is generally L-shaped. Finally, the defendant contends that said tooth does not have a part which corresponds to the following element of claim 14 of the Hassler patent: "the shank immediately adjacent the toe has a forwardly-presented vertical chisel edge." The court is satisfied that, again, the defendant is in error. The shank immediately adjacent the toe does have a forwardly-presented vertical chisel edge.

The court is of the opinion that the Mall side planer chain tooth infringes claims 9, 10, 13 and 14.

The court comes now to the question of validity.

On the question of alleged anticipation and alleged want of invention the defendant on the trial introduced twenty-seven patents, including the following eleven which were of record in the Hassler patent file:

| | | | |
|---|---|---|---|
| Boynton | 73,226 | Jan. | 14, 1868 |
| Osgood | 238,521 | Mar. | 8, 1881 |
| Shipe | 323,602 | Aug. | 4, 1885 |
| Bailey | 834,251 | Oct. | 30, 1906 |
| Schubert | 869,959 | Oct. | 29, 1907 |
| Bens | 893,897 | July | 21, 1908 |
| Martin | 1,150,218 | Aug. | 17, 1915 |
| Bens | 1,634,644 | July | 5, 1927 |
| Ferguson | 1,642,145 | Sept. | 13, 1927 |
| Bens | 1,779,083 | Oct. | 21, 1930 |
| Arsneau | 2,051,195 | Aug. | 18, 1936 |

The remaining sixteen patents cited were the following:

| | | | |
|---|---|---|---|
| Matthews | 16,627 | Feb. | 10, 1857 |
| Barnes et al. | 261,197 | July | 18, 1882 |
| Maxwell | 296,199 | April | 1, 1884 |
| Lewis | 485,503 | Nov. | 1, 1892 |
| Hall et al. | 518,646 | April | 24, 1894 |
| Parry | 593,684 | Nov. | 16, 1897 |
| Barnes | 749,603 | Jan. | 12, 1904 |
| Peters | 1,412,315 | Apr. | 11, 1922 |
| Bens | 1,652,295 | Dec. | 13, 1927 |
| Geithle | 1,745,090 | Jan. | 28, 1930 |
| Vaccari | 1,802,129 | Apr. | 21, 1931 |
| Dunlap | 1,886,382 | Nov. | 8, 1932 |
| Stuve | 1,937,073 | Nov. | 28, 1933 |
| Lacher | 2,229,214 | Jan. | 21, 1941 |
| Wallace (Swedish) | 5,341 | June | 26, 1893 |
| Menzel (British) | 274,348 | July | 21, 1927 |

In his brief, counsel for the defendant referred to and relied upon only the following:

| | | | |
|---|---|---|---|
| Barnes et al. | 261,197 | July | 18, 1882; |
| Shipe | 323,602 | Aug. | 4, 1885; |
| Barnes | 749,603 | Jan. | 12, 1904; |
| Bailey | 834,251 | Oct. | 30, 1906; |
| Bens | 1,652,295 | Dec. | 13, 1927; |
| Geithle | 1,745,090 | Jan. | 28, 1930; |
| Dunlap | 1,886,382 | Nov. | 8, 1932; |
| Lacher | 2,229,214 | Jan. | 21, 1941; |
| Wallace (Swedish) | 5,341 | June | 26, 1893. |

Claims 9 and 10 each claim merely "a saw tooth" and claims 13 and 14 each claim merely "a saw having" a particular kind of tooth. In the court's opinion, each of these claims is anticipated by Barnes et al. 261,197, issued July 18, 1882, Barnes 749,603 issued January 12, 1904; and Wallace (Swedish) 5,341 issued June 26, 1893. The two Barnes' patents show groove cutters which, on

examination, are disclosed to be a special kind of circular saw. Wallace shows a hand or circular saw having teeth of the kind claimed in the four claims now under consideration.

Claims 1, 2, 11 and 12 are not anticipated by any of the references, disclose invention and are, in the court's opinion, valid.

Counsel may prepare and, on notice, present drafts of findings of fact, conclusions of law and a judgment order giving effect to the views herein expressed.